CUDAHY, Circuit Judge.
 

 After Zigurds and Mara Teranis filed for Chapter 7 bankruptcy, the trustee, Michael Dubis, filed suit to obtain authority to sell a condominium unit titled in the names of the debtor, Mara Teranis, and her mother, Nina Zarins. Zarins, an 80-year old widow, opposed the trustee, asserting that since she is the only owner and resident of the property, Dubis has no claim to it. The district court disagreed, finding that Teranis did have an interest in the property, and gave Dubis the authority to sell the condominium. Zarins appeals, contending that the district court erred in finding that Teranis was a co-owner of the property. Zarins also argues that the district court should have imposed a constructive trust to protect her interest in the property. We have jurisdiction in this case pursuant to 28 U.S.C. § 158(d). We affirm.
 

 I. Factual Background
 

 On July 31, 1985, with proceeds from the sale of her house in West Allis, Wisconsin and funds from her savings account, Zarins purchased a condominium unit in Racine, Wisconsin. She instructed her- real estate agent that the property should be titled jointly in her name and the name of Teranis, her only child, with right of-survivorship. The deed issued after purchase listed Zarins and Teranis as grantees without stating whether it was a joint ownership and, specifically, whether there was a right of survivor-ship.
 

 Since the purchase, only Zarins has lived in the property. Teranis has never lived there, and has paid for little or none of the upkeep and maintenance, including insurance, taxes and utilities. On June 30, 1995, Zarins and Teranis signed a mortgage on the property to secure a loan for Zarins’ grandson (Teranis’ son). The mortgage listed both Zarins
 
 and
 
 Teranis as mortgagors.
 

 In 1995, Teranis and her husband hit the financial skids and filed for Chapter 7 bankruptcy. As a result, the bankruptcy trustee, Dubis, initiated a suit to obtain authority to sell the condominium. Zarins attempted to
 
 *471
 
 block the suit, asserting that Teranis has no interest in the property. The district court found that Teranis has a co-ownership interest in the property and gave Dubis authority to sell. Zarins is appealing that decision.
 

 II. Legal Analysis
 

 Zarins argues that the district court erred in authorizing the sale because she is the sole owner of the condominium. Zarins contends that the district court misinterpreted
 
 Jezo v. Jezo,
 
 23 Wis.2d 399, 129 N.W.2d 195 (1964), in finding that Teranis has co-ownership of the condominium. Alternatively, Zarins argues that the district court should have imposed a constructive trust to prevent unjust enrichment. Because this appeal presents a mixed question of law and fact, we review for clear error.
 
 See In re Krehl,
 
 86 F.3d 737, 742 (7th Cir.1996).
 

 A. Coequal ownership
 

 Zarins argues that she and Teranis do not have co-equal ownership, even though both are listed on the deed.
 
 [1]
 
 Zarins contends that the district court misinterpreted, and thus misapplied, the rule of
 
 Jezo v. Jezo,
 
 23 Wis.2d 399, 127 N.W.2d 246 (1964)
 
 (“Jezo
 
 I”). In
 
 Jezo I,
 
 a divorce case, the husband sued his wife seeking partition of jointly-owned property. In that case, the Wisconsin Supreme Court said that joint tenants are normally presumed to enjoy the estate equally during their lives, and each has an undivided one-half interest in the property.
 
 [2]
 
 Nevertheless, it is possible in the circumstances of
 
 Jezo I
 
 to recognize unequal interests.
 
 Id.
 
 127 N.W.2d at 250. Construing
 
 Jezo I
 
 and because it thought that that case was limited to married cotenants, the district court concluded here that Zarins and Teranis were coequal owners of the condominium.
 

 Zarins now appeals and relies on a particular passage from
 
 Jezo I:
 

 The rule is, therefore, that the interests of joint tenants being equal during their lives, a presumption arises that upon dissolution of the joint tenancy during the lives of the cotenants, each is entitled to an equal share of the proceeds. This presumption is subject to rebuttal, however, and does not prevent proof from being introduced that the respective holdings and interests of the parties are unequal. The presumption may be rebutted by evidence showing the source of the actual cash outlay at the time of acquisition, the intent of the coten-ant creating the joint tenancy to make a gift of the half-interest to the other coten-ant, unequal contribution by way of money or services, unequal expenditures in improving the property or freeing it from encumbrances and clouds, or other evidence raising inferences contrary to the idea of equal interest in the joint estate.
 

 Id.
 
 Zarins believes this passage means that Zarins is permitted under Wisconsin law to
 
 *472
 
 show that Teranis did not have an equal ownership share because Teranis did not contribute equally to the property. Zarins presents as proof of unequal ownership (1) that the condominium was purchased with money from Zarins only, (2) that Zarins intended to be the sole owner during her lifetime with Teranis owning the property only after Zarins’ death and (3) that Teranis has made little or no contribution to the condominium in money or services.
 

 Thus, Zarins argues that there was sufficient proof to rebut the presumption of equal ownership under the rule of
 
 Jezo I.
 
 Zarins claims that the district court erred by narrowly
 
 interpreting.Jezo I
 
 to apply only to married cotenants. Zarins Br. at 10. To bolster her argument, Zarins cites the per curiam memorandum issued by the
 
 Jezo I
 
 court following motions for rehearing,
 
 Jezo v. Jezo,
 
 23 Wis.2d 399, 129 N.W.2d 195 (1964)
 
 (“Jezo II”).
 
 That memorandum was issued expressly to “amplify” the portion of the opinion we quote above and contained language limiting at least its own scope, as follows: “We confine these added comments - to the limited situation of a partition suit between wife and husband as it relates to property ostensibly standing in their joint' names as joint tenants.”
 
 Id.
 
 129 N.W.2d at 196. Zarins interprets this language to suggest that by negative implication the general rule of
 
 Jezo I
 
 applies to non-married coten-ants as well as to husband and wife. At issue, therefore, is whether all cotenants or only married cotenants are free to overcome the presumption of equal ownership when the deed’s language is clear.
 

 Zarins believes that
 
 Jezo II
 
 applies only to married co-tenants, and
 
 Jezo I
 
 to both married and unmarried co-tenants. We think that the district court was correct in concluding that
 
 Jezo II,
 
 instead of giving rise to a negative implication for
 
 Jezo I,
 
 'implicitly limits
 
 Jezo I
 
 as well. We interpret the per curiam statement to mean that the
 
 Jezo
 
 court added its comments on rehearing with primary focus on the need for observance of divorce considerations in partition suits between divorcing couples rather than on emphasizing that its own terms applied only to married couples. The
 
 Jezo
 
 court intended its first opinion
 
 (Jezo I)
 
 implicitly to apply only to married couples as did
 
 Jezo II
 
 explicitly. Zarins’ argument that
 
 Jezo II
 
 implies that
 
 Jezo I
 
 extends beyond married couples therefore fails.
 
 [3]
 

 However, as this discussion suggests,
 
 Jezo I
 
 and
 
 Jezo II
 
 are not models of clarity. But whatever the extent of their application, they and the cases they cite, like
 
 Williams v. Monzingo,
 
 235 Iowa 434, 16 N.W.2d 619 (1944), address only the rights
 
 inter sese
 
 of cotenants. They do not deal with the rights of
 
 creditors
 
 of one or more of the cotenants.
 

 We agree with the district court that, if
 
 Jezo I
 
 were applied in voluntary bankruptcy cases, “debtors could shield from creditors assets received as gifts because they did not contribute to their acquisition.” Memo: Op. at 4. This is exactly what Teranis attempts to do with the condominium. Even though her name is on the deed as owner, Teranis wants to claim that the property is a gift, and, moreover, a future gift, so that it cannot be taken by her creditors. Despite Zarins’ argument to the" contrary, it does not matter whether she did or did not intend to give one half of the condominium to Teranis at the signing of the deed or all of it at her, Zarins’, death; the fact remains that Teranis’ name is on the deed now.
 

 Third parties, be they prospective buyers' or creditors, cannot be expected to investigate the possibility of unequal ownership, as
 
 Jezo II
 
 made clear; they can rely upon the face of the deed indicating that each joint tenant has an equal interest in the property.
 
 Jezo II,
 
 129 N.W.2d at 197. Du-bis relied on the deed to ascertain Teranis’ ownership of the condominium. The district court did not err in finding that Teranis -is a coequal owner of the condominium.
 

 B. Constructive Trust
 

 Zarins argues in the alternative that the district court erred in failing to impose a
 
 *473
 
 constructive trust on the property for her benefit. The district court had found that there was no legal basis for granting the remedy because there was no unjust enrichment, since “Teranis did not obtain title to the condominium by actual or constructive fraud, duress, abuse of a confidential relationship, mistake, commission of a wrong, or by any form of unconscionable conduct.” Memo. Op. at 6. Zarins contends that there is sufficient basis for a constructive trust due to mistake. Zarins claims that her mistake was in thinking that putting Teranis’ name on the deed would have no other effect than to make it easier for Teranis to receive the property by simplifying probate proceedings when Zarins died.
 

 A constructive trust is an equitable remedy that may be imposed only in limited circumstances to prevent unjust enrichment.
 
 See Wilharms v. Wilharms,
 
 93 Wis.2d 671, 287 N.W.2d 779, 783 (1980). A party “seeking a constructive trust must establish the elements of unjust enrichment and also that the benefit to the other party was obtained by means of actual or constructive fraud, duress, abuse of confidential relationship, mistake, commission of a wrong or other unconscionable conduct.”
 
 M & I First Nat’l Bank v. Episcopal Homes Management, Inc.,
 
 195 Wis.2d 485, 536 N.W.2d 175, 188 (App.1995). In the instant case, there is no unjust enrichment because not only did Zarins, as the district court noted, “kn[ow] that the condominium was titled jointly in her daughter’s name,” Memo. Op. at 6, but Zarins actually instructed that the deed be in both names. Zarins intended to enrich Ter-anis, but the enrichment was to occur at a later date.
 
 [4]
 

 Moreover, Zarins’ claim of mistake is without merit. Zarins argues that her mistake was in believing that she could put the property in both names for the sole purpose of simplifying transfer from mother to daughter upon her death. Thus, Zarins argues, her mistake would lead to unjust enrichment.
 
 [5]
 
 We disagree.
 

 Mistake in the legal sense is different from the mistake to which Zarins admits. Mistake is:
 

 Some unintentional act ... or error arising from ignorance, surprise, imposition, or misplaced confidence____ A mistake exists when a person, under some
 
 erroneous conviction
 
 of law or fact, does ... some act which, but for the erroneous conviction, he would not have done____
 

 Black’s Law Dictionary 1001-02 (6th ed.1990) (emphasis supplied). But Zarins did not have an erroneous conviction. Her correct belief was that putting the deed in Ter-anis’ name as well as her own would facilitate the transfer. Moreover, Zarins’ act of putting Teranis’ name on the deed was not unintentional; Zarins had every intention of giving her daughter the property. The only error Zarins made, in her desire to avoid probate, was in not thinking about the possible negative consequences of her act.
 

 Mistake as a grounds for enforcing a constructive trust applies where the property is conveyed to one who was not intended to receive it from the grantor, or where the grantor mistakenly believes that the grantee is legally entitled to the property conveyed.
 
 See Wilharms,
 
 287 N.W.2d at 784 n. 2. Mistake may also arise when the property is not conveyed despite the grantor’s intention to convey.
 
 Id.
 
 In other words, mistake occurs when the wrong person receives the property. By contrast, Zarins conveyed the property to Teranis intending for Teranis to receive it,
 
 at a later date.
 
 The mistake was in the timing, not in the recipient. The condo that Zarins intended to convey was conveyed, but sooner than she expected. The district court did not err in finding that there was no mistake constituting grounds for a constructive trust.
 

 
 *474
 
 We decline to address the issue of whether Dubis is or is not a bona fide purchaser. Although Zarins argues that a constructive trust may still be established because Dubis is not a bona fide purchaser, “[w]ithout more, this alone is not the legal basis for establishing a constructive trust.” Memo. Op. at 7. Rather, if the “elements for imposing a constructive trust have been satisfied,
 
 and
 
 the holder of the legal title is not a bona fide purchaser, a constructive trust may be imposed.”
 
 Duhame v. Duhame,
 
 154 Wis.2d 258, 453 N.W.2d 149, 152 (1989) (emphasis supplied). Here, since the elements for a constructive trust have not been satisfied, there is no need to reach the issue of whether Dubis acts as a bona fide purchaser.
 

 III. Conclusion
 

 While we sympathize with Zarins’ misfortune in being adversely affected by her daughter’s bankruptcy, the district court correctly found that Teranis is a coequal owner of the property and that there is no legal basis for establishing a constructive trust. The district court, therefore, did not err in authorizing Dubis to sell the condominium. The district court’s opinion is
 

 Affirmed.
 

 [1]
 

 . For purposes of this opinion, we will not distinguish between tenancy in common and joint tenancy, for ”[w]hile a joint tenancy differs from a tenancy in common in several respects, for the purpose of division of the proceeds derived from the sale of the property upon termination of the joint tenancy, the essential differences between the two cease to exist.”
 
 Jezo
 
 v.
 
 Jezo,
 
 23 Wis.2d 399, 127 N.W.2d 246, 249 (1964)
 
 (Jezo I).
 
 We note that despite this plain language, Zarins believes that there is a significant distinction that is relevant here between joint tenancy and tenancy in common. She argues that every tenancy in common is subject to a presumption of equal ownership that may be rebutted by proof that the interest of the parties are unequal. She emphasizes that
 
 Jezo I
 
 cited
 
 Williams v. Monzingo,
 
 235 Iowa 434, 16 N.W.2d 619 (1944), for this exact proposition. But Zarins has not directed us to, nor have we been able to find, a Wisconsin case that employs a rebuttable presumption even as between the parties to a tenancy in common. More importantly,
 
 Williams
 
 did not occur against the backdrop of a bankruptcy proceeding in which creditors sought access to a debtor’s assets. A creditor confronted with a joint deed cannot be .expected to explore the possibility of unequal ownership. Instead, the creditor may be entitled to rely on the face of the deed.
 
 Cf.
 
 66
 
 Am. Jur. 2d, Records and Recording Laws
 
 § 99 (1973) (noting that if a third party cannot rely on the face of a deed, "no one would be safe... in loaning upon the strength of [real estate] as security.”). ' We will discuss this point in greater detail, but for the present, it is sufficient to note that we rely on the plain language of
 
 Jezo I
 
 in asserting that it is unnecessaiy to distinguish between tenancy in common and joint tenancy.
 

 [2]
 

 . Further, deeds are construed to determine the intent of the parties. If the deed is not ambiguous, the grantor’s intent will be construed to follow the language of the deed.
 
 Joseph Mann Library Ass'n v. City of Two Rivers,
 
 272 Wis. 441, 76 N.W.2d 388, 391 (1956).
 

 [3]
 

 . Justice Hallows, dissenting in
 
 Jezo II,
 
 argued for broader application of the rule that, with married cotenants, courts may look behind the formal equality of co-title holders.
 
 Jezo II,
 
 129 N.W.2d at 197. Justice Hallows thought that the same rule should apply to other family relationships, as in the present case.
 

 [4]
 

 . Certainly Zarins didn’t intend that Teranis'
 
 creditors
 
 would be enriched. Unfortunately, when Teranis has declared bankruptcy, her creditors acquire a justifiable right to her assets.
 

 [5]
 

 . Zarins seems to be implying that her naiveté about the legal consequences of her actions should allow her to escape them. In other words, Zarins wants the positive benefits of having Teranis on the deed, but not the negative consequences. The law does not allow for such selective enforcement of the rules.