**PHOENIX BOND & INDEMNITY COMPANY, Plaintiff,**

v.

**MCM ENTERPRISES, INC., et al., Defendant.**

**No. 1:03–CV–00558–SEB–VSS.**

United States District Court, S.D. Indiana, Indianapolis Division.

Jan. 3, 2005.

158

James T. Young, Rubin & Levin, PC, Indianapolis, IN, for Appellant.

Jeffrey John Graham, Jerald I. Ancel, Sommer Barnard Ackerson, PC, James E. Carlberg, Jeannette Hinshaw, Bose Mckinney & Evans, Michael W. Hile, Katz & Korin, PC, Indianapolis, IN, for Appellees.

### ORDER AFFIRMING THE BANKRUPTCY COURT

BARKER, District Judge.

This matter comes before the Court on Phoenix Bond & Indemnity Company's ("Phoenix") appeal of the Bankruptcy Court's denial of a Motion to Reconsider Orders Dismissing and Closing Case to Reopen the Estate and Retroactively Validate Tax Sale of April, 1999 (the "Motion"). Through no fault of its own, Phoenix purchased a parcel of property belonging to MCM Enterprises, Inc. ("MCM") at a tax sale from the Cook County (Illinois) Collector after MCM had filed for bankruptcy and thus in violation of the automatic stay. MCM's bankruptcy case was subsequently dis-

missed and the property sold to Royal Dutch Company ("RDC"). Pursuant to Federal Rule of Civil Procedure 60(b)(6), which is incorporated into Bankruptcy Rule 9024, Phoenix moved the Bankruptcy Court to reopen the bankruptcy case and retroactively validate the tax sale thereby allowing Phoenix to obtain a tax deed, which motion the Bankruptcy Court denied.

As we explain below, we *AFFIRM* the Bankruptcy Court's order denying the Motion to Reopen the bankruptcy case.

### Factual Background

The parties do not dispute the factual findings made in the Bankruptcy court and, therefore, we adopt the facts laid out there, with only slight modifications for purposes of brevity and clarity.

MCM filed its petition for relief under Chapter 11 of the United States Bankruptcy Code on March 9, 1998. As of that date, MCM was the record owner of a parcel of real estate located at the common address of 4830–56 South Western Avenue, Chicago, Illinois ("the Western Avenue Property"). The Western Avenue Property consisted of three parcels for indexing purposes, designated Property Index Numbers ("PIN") 19–12–209–008, 19–12–209–009, 19–12–209–010.

Under Illinois law, the annual property taxes assessed for any given calendar year become a lien on the related property on January 1 of that year. MCM did not timely pay the 1997 property taxes due on the Western Avenue Property and, accordingly, the government unit responsible for collecting the taxes (the "Cook County Collector") was named as a creditor in MCM's bankruptcy schedules and presum-

ably received notice of the Chapter 11 filing. Nevertheless, on April 4, 1999, without first obtaining relief from the automatic stay, the Cook County Collector sold the parcel designated as PIN 19–12–209–010 (the "Tax Sale Parcel") to Phoenix at its annual tax sale (the "Tax Sale"). Pursuant to Illinois law, MCM, as the record owner of the property, should have been and presumably was notified of the Tax Sale, yet, did nothing to alert either the Court or the bankruptcy estate of the sale.

Phoenix was issued a Certificate of Purchase upon completion of the sale. Phoenix later included in its costs the unpaid and delinquent taxes for 1998, 1999, and 2000 with the tax-sale purchase amount for a total price of $19,209.94.[1] Shortly thereafter, a structure located on the Western Avenue Property was damaged by fire. The City of Chicago ("City") eventually instituted a demolition action to remove the unsafe condition of the property (the "Demolition Case"). Upon being named in that action as a defendant by the City, Phoenix sought and obtained on September 10, 1999, a protective order to insulate itself from further liability for the property.

MCM's bankruptcy case was dismissed on August 8, 2000, and administratively closed on September 15, 2000, and MCM's assets were placed in state-court receivership. On August 1, 2002, pursuant to court approval, the state court receiver transferred the Western Avenue Property, including the Tax Sale Parcel, to the Royal Dutch Company ("RDC") in exchange for $75,000.

Meanwhile, in October of 2001, Phoenix had filed a petition in the Cook County Circuit Court requesting the issuance of a tax deed for the Tax Sale Parcel. In the process, Phoenix discovered that MCM

---

1. All told, Phoenix's out-of-pocket expenses relating to the Tax Sale Parcel exceeded $124,000.00.

had been in bankruptcy at the time of the Tax Sale and that the sale of the parcel to it had taken place in violation of the automatic stay imposed by 11 U.S.C. § 362. On July 16, 2002, Phoenix filed with the Bankruptcy Court a Motion to Reopen Estate and Retroactively Validate Tax Sale of April 1999 (the "Motion to Reopen"), to which both the City and MCM objected. The Court conducted a hearing on the Motion to Reopen on November 26, 2002, and, in support of its Motion to Reopen, Phoenix offered uncontroverted evidence that it did not learn of MCM's bankruptcy until early 2002, well after the case had been dismissed and closed.

In a ruling dated December 11, 2002, the Bankruptcy Judge denied Phoenix's Motion to Reopen as procedurally defective.[2]

Phoenix filed a subsequent motion, pursuant to Federal Rule of Civil Procedure 60(b)(6), as incorporated by Bankruptcy Rule 9024,[3] to reopen the bankruptcy case, to which the City, MCM and the RDC again objected. In an order dated March 19, 2003, the Bankruptcy Judge denied Phoenix's motion, this time because Phoenix failed to demonstrate "extraordinary circumstances" or "extreme and undue hardship." Phoenix has appealed this March 19, 2003, denial by of the Bankruptcy Court, and is the ruling under review here.[4]

### Legal Analysis

#### A. Standard of Review

■ When reviewing the bankruptcy court's conclusions of law, the district

---

**2.** The Court found that a bankruptcy case which is dismissed prior to full administration cannot be "reopened" pursuant to 11 U.S.C. § 350(b).

**3.** Federal Rule of Civil Procedure 60(b) states: On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment.

**4.** There are have been accusations that Phoenix and MCM both lack standing in this suit. See The City's Brief of Appellee at 13–15; Appellant's Reply Brief at 4–5, After reading the parties' briefings, we are convinced that Phoenix possesses the constitutional requirements for standing. Indeed, it is undisputed

that Phoenix has a material, pecuniary interest in the outcome of this litigation and of the disposition of the Tax Sale Parcel, and we have been cited no case law by Appellees indicating a party in Phoenix's position lacks standing to bring a Rule 60(b)(6) Motion to Reconsider.

As for MCM, because the corporation was administratively dissolved, Indiana Code § 23–1–46–2(c) prohibits the corporation from "carry[ing] on any business except that necessary to wind up and liquidate its business and affairs under ... IC 23–1–45–5 ...." Pursuant to IC 23–1–45–5(a)(2) and (5), a dissolved corporation is allowed to carry on business appropriate to wind up and liquidating its business and affairs, including "disposing of its properties that will not be distributed in kind to its shareholders" and "doing every other act necessary to wind up and liquidate its business and affairs." We conclude that the case at bar reasonably falls within the boundaries of permissible activities of a dissolved Indiana corporation, pursuant to IC 23–1–45–5; therefore, we hold that MCM has standing in this suit. See Chicago Title & Trust Co. v. Forty–One Thirty–Six Wilcox Bldg. Corp., 302 U.S. 120, 58 S.Ct. 125, 127, 82 L.Ed. 147 (1937) (holding: "How long and upon what terms a state-created corporation may continue to exist is a matter exclusively of state power").

court applies a de novo standard of review. *Colon v. Option One Mortgage Corp.*, 319 F.3d 912, 916 (7th Cir.2003) (citing *Meyer v. Rigdon*, 36 F.3d 1375, 1378 (7th Cir. 1994)). However, we review mixed questions of law and fact more deferentially under the clearly erroneous standard. *Matter of Teranis*, 128 F.3d 469, 471 (7th Cir.1997); *In re Krehl*, 86 F.3d 737, 742 (7th Cir.1996) (citing *United States v. Baldwin*, 60 F.3d 363, 365 (7th Cir.1995)).

 We review the denial of a Rule 60(b) motion under a highly deferential standard of review and the decision by the bankruptcy court is reversed only for an abuse of discretion. *Cincinnati Ins. Co. v. Flanders Elec. Motor Service, Inc.*, 131 F.3d 625, 628 (7th Cir.1997) (*Soler v. Waite*, 989 F.2d 251, 253 (7th Cir.1993)). As the Seventh Circuit has explained: "The 'abuse of discretion' standard simply means that we shall not second-guess the decision of a trial judge that is in conformity with established legal principles and, in terms of its application of those principles to the facts of the case, is within the range of options from which one could expect a reasonable trial judge to select." *Id.* (citing *United States v. Koen*, 982 F.2d 1101, 1114 (7th Cir.1992)). To constitute an abuse of discretion, the decision by the bankruptcy court must be more than "just clearly incorrect," the decision must be

"downright unreasonable." *Id.* (quoting *Morton v. Smith*, 91 F.3d 867, 870 (7th Cir.1996); *Fuller v. CBT Corp.*, 905 F.2d 1055, 1058 (7th Cir.1990)); *see also McKnight v. United States Steel Corp.*, 726 F.2d 333, 335 (7th Cir.1984) (holding that "abuse of discretion in denying a 60(b) motion is established only when no reasonable person could agree with the district court, and there is no abuse of discretion if a reasonable person could disagree as to the propriety of the court's action"). However, the Seventh Circuit has held that a trial court "necessarily abuses its discretion when its decision is based solely on an erroneous conclusion of law." *Colon*, 319 F.3d at 916 (citing *United Air Lines, Inc. v. Int'l Ass'n of Machinist & Aerospace Workers, AFL–CIO*, 243 F.3d 349, 361 (7th Cir.2001)). The appellant, in this case, Phoenix, bears the burden of establishing that the lower court abused its discretion in the particular respect challenged on appeal. *See Soler*, 989 F.2d at 253.

B. *Lack of "extraordinary circumstances" or "extreme and undue hardship":*

The Bankruptcy Court denied Phoenix's Motion having determined that, since Phoenix possessed other remedies under § 21–310 of the Illinois Property Tax Code (the "Sale in Error" statute),[5] there were

---

5. § 21–310. Sales in error:

(a) When, upon application of the county collector, the owner of the certificate of purchase, or a municipality which owns or has owned the property ordered sold, it appears to the satisfaction of the court which ordered the property sold that any of the following subsections are applicable, the court shall declare the sale to be a sale in error:

\* \* \* \* \* \*

(6) prior to the tax sale a voluntary or involuntary petition has been filed by or against the legal or beneficial owner of

the property requesting relief under the provisions of 11 U.S.C. Chapter 7, 11, 12, or 13,

\* \* \* \* \* \*

(d) If a sale is declared to be a sale in error, the county clerk shall make entry in the tax judgment, sale, redemption and forfeiture record, that the property was erroneously sold, and the county collector shall, on demand of the owner of the certificate of purchase, refund the amount paid, pay any interest and costs as may be ordered under Sections 21–315 through 21–335, and cancel the certificate so far as it relates to the property. The county collector shall deduct

not "extraordinary circumstances" or "extreme and undue hardship" which would satisfy the requirements of Rule 60(b)(6).[6] Phoenix argues that the Bankruptcy Court misinterpreted Illinois law and that in fact it cannot be made whole through state law procedures.

We review the Bankruptcy Court's conclusions about Illinois law de novo. In resolving an issue of statutory construction, we begin with the wording of the statute and, if the wording of the statute is clear, that is the end of the matter. *Colon*, 319 F.3d at 916–17 (citing *United States v. Balint*, 201 F.3d 928, 932 (7th Cir.2000); *United States v. Hayward*, 6 F.3d 1241, 1245 (7th Cir.1993)). We find the wording of the Sale in Error statute sufficiently clear with regards to the case at bar to sustain the Bankruptcy Court's holding. The sale by the Cook County Collector of the Tax Sale Parcel to Phoenix clearly qualifies as a sale in error under § 21–310, and, consequently, Phoenix would be entitled to compensation for "the amount paid, [and] any interest and costs as may be ordered under Sections 21–315 through 21–335." 35 Ill. Comp. Stat. 200/21–310(d).

The facts indicate that Phoenix posted $19,209.94 to the Tax Sale and that, in total, its out-of-pocket expenses exceed $124,000.00. The Bankruptcy Court concluded that, under Illinois law, Phoenix presumably "could recover these amounts, plus interest and costs, and be returned to the *status quo*." Bankruptcy Order at 6.[7]

The Bankruptcy Court continued, "In light of this remedy, the Court cannot conclude that adequate grounds exist to set aside the order dismissing MCM's Bankruptcy case simply in an effort to determine whether the automatic stay can or should be retroactively lifted." *Id*. Phoenix contends this conclusion by the Bankruptcy Court was erroneous in its premise that Phoenix could be returned to the status quo under the Sale in Error statute because Phoenix would not be able to recover its opportunity costs or obtain a tax deed for the Tax Sale Parcel. Assuming that both of Phoenix's contentions have merit, these arguments nonetheless fail to undermine the Bankruptcy Court's order as clearly unreasonable.

First, the lost opportunity costs can hardly be described as extraordinary. By definition, any expenditure of money by a company involves opportunity costs and, in theory, nearly every decision a company makes has an associated opportunity cost. It is difficult to see how such a common, near universal cost could create the extraordinary circumstances envisioned by Rule 60(b)(6). Moreover, Phoenix does not argue that its lost opportunity costs related to the Tax Sale Parcel were unusual, exceptional, or even large. Thus, we conclude that it was not "downright unreasonable" for the Bankruptcy Court to determine that the costs associated with the loss of opportunity by Phoenix were not an "extraordinary circumstance" or "extreme and undue hardship."

---

from the accounts of the appropriate taxing bodies their pro rata amounts paid.
35 Ill. Comp. Stat. 200/21–310.

**6.** "It is well-established that Rule 60(b) relief is an extraordinary remedy and is granted only in exceptional circumstances." *Dickerson v. Board of Educ. of Ford Heights, Ill.*, 32 F.3d 1114, 1116 (7th Cir.1994) (internal quotations omitted).

**7.** None of the parties provided the Court with an alternative interpretation of the Sale in Error statute, or argued that the Bankruptcy Court erroneously concluded which of Phoenix's out-of-pocket expenses were covered by the statute.

Second, Phoenix does not explain how receiving monetary compensation under the Illinois Sale in Error statute, instead of a tax deed, would constitute an "extraordinary circumstance" or "extreme and undue hardship." If Phoenix is entitled to a tax deed under Illinois law, that entitlement would not foreclose an award of compensation, in lieu of the tax deed, under the Sale in Error statute. Phoenix provides no meaningful explanation for why it would be an "extreme and undue hardship" to require it to obtain a remedy via one option rather than the other. Given these two alternative remedies, the Bankruptcy Court determination that Phoenix could be made whole under the statutory scheme instead of necessitating the additional time and expense of reopening the bankruptcy case was not unreasonable.[8]

Our confidence in the Bankruptcy Court's conclusion is further buttressed by the inherent limitations on a Rule 60(b) motion. When considering a Rule 60(b) motion, the Court is admonished to factor in that "the need for the finality of judgments is an overarching concern." Rule 60(b) sets a "higher value on the social interest in the finality of litigation." *Cincinnati Ins. Co.*, 131 F.3d at 628 (citing *Merit Ins. Co. v. Leatherby Ins. Co.*, 714 F.2d 673, 682 (7th Cir.1983)). Phoenix has failed to demonstrate that the Bankruptcy Court's decision not to upset the finality of MCM's bankruptcy dismissal was clearly unreasonable. Accordingly, we conclude that the Bankruptcy Court did not abuse its discretion by denying Phoenix's motion to reopen the MCM bankruptcy case.[9]

### Conclusion

For these reasons, we uphold the Bankruptcy Court's correct interpretation and application of Illinois law and hold that the Bankruptcy Court's decisions were not an abuse of discretion. The Bankruptcy Court's order denying Phoenix's Rule 60(b) motion to reopen the bankruptcy case is, accordingly, *AFFIRMED.*

---

8. This is especially true in light of the fact that reopening the bankruptcy case is only the first step of the process and does not guarantee Phoenix's ultimate success in obtaining relief from the automatic stay.

9. Because we affirm the ruling of the Bankruptcy Court on this ground, we decline to address the Bankruptcy Court's analysis of the Illinois Court of Appeals decision *In re Application of County Collector for Delinquent Taxes,* 291 Ill.App.3d 588, 225 Ill.Dec. 492,

683 N.E.2d 995 (1997) (hereinafter *"Ballinger"*). The Bankruptcy Court clearly indicated that *Ballinger* provided an additional justification to deny Phoenix's motion; even so, despite Phoenix's assertion to the contrary, the *Ballinger* analysis did not affect the Bankruptcy Court's determination that there was not a showing of "the type of 'extraordinary circumstances' or 'extreme and undue hardship' required by Rule 60(b)(6)." Bankruptcy Order at 5.