

FILED

MAY 11 2015

SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

**NOT FOR PUBLICATION**

# UNITED STATES BANKRUPTCY APPELLATE PANEL

## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re: | BAP No.   CC-14-1253-KiKuD |
| SIE KHALIL, | Bk. No.   1:12-bk-11156 |
| Debtor. | Adv. No.  1:13-ap-1234 |
| | |
| LAWRENCE D. ROSE, | |
| Appellant, | |
| v. | **M E M O R A N D U M**[1] |
| DAVID K. GOTTLIEB, Chapter 7 Trustee, | |
| Appellee. | |

Argued and Submitted on February 19, 2015,
at Los Angeles, California

Filed - May 11, 2015

Appeal from the United States Bankruptcy Court
for the Central District of California

Honorable Maureen A. Tighe, Bankruptcy Judge, Presiding

Appearances:    Michael F. Chekian argued for appellant Lawrence D. Rose; Michael W. Davis of Ezra Brutzkus Gubner LLP argued for appellee David K. Gottlieb, Chapter 7 Trustee.

Before: KIRSCHER, KURTZ and DUNN, Bankruptcy Judges.

---

[1] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (see Fed. R. App. P. 32.1), it has no precedential value. See 9th Cir. BAP Rule 8024-1.

Appellant Lawrence D. Rose ("Rose") appeals an order denying his motion for summary judgment and granting partial summary judgment to appellee, chapter 7[2] trustee David K. Gottlieb ("Trustee").  The bankruptcy court determined that Rose, a co-owner of real property, was entitled to only 50% of the net sale proceeds from Trustee's sale of the property under § 363(h) and not the 80% he claimed.  We AFFIRM.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### A.   Prepetition events

In 2008, Rose and debtor Sie Khalil ("Khalil") entered into a written agreement whereby Khalil agreed, as general contractor, to construct a single family residence for Rose, who is a California attorney.  Ultimately, the parties ended up in litigation for what Rose claims was a diversion of funds and materials by Khalil and damages of $250,000.

As part of an attempt to settle the matter in December 2010, Rose and Khalil entered into a real estate transaction together, purchasing an investment property located in Reseda, California ("Property").  Khalil was to refurbish the Property; then the men would sell it and split the proceeds.  Rose and Khalil purchased the Property for $375,000, with Rose contributing $300,000 to the purchase price and Khalil contributing $75,000.

The grant deed transferring title to the Property to Rose and Khalil, recorded on December 21, 2010, reads as follows:

Donald R. Miller, Jr., as to an undivided 25.0000%

---

[2] Unless specified otherwise, all chapter, code and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and the Federal Rules of Bankruptcy Procedure, Rules 1001-9037.  The Federal Rules of Civil Procedure are referred to as "Civil Rules."

interest; Dina C. Miller, as to an undivided 25.0000% interest and Joy Rivellia [sic] Miller, Trustee of the Joy Rivelli Miller Trust dated September 16, 2010, as to an undivided 50.0000% interest hereby GRANT(s) to: Sie Khalil, a Single Man and Lawrence Rose, a Single Man as Tenants in Common.

The grant deed was silent as to the mens' percentage ownership interests in the Property.

Rose and Khalil entered into an agreement in April 2011 ("Settlement Agreement"). The Settlement Agreement provided that Rose had loaned Khalil $300,000 to purchase the Property. Khalil agreed to sign a promissory note in that amount. To secure payment of the promissory note and the $250,000 debt from the failed construction project, Khalil agreed to execute first and second deeds of trust encumbering the Property in the total amount of $550,000. In the event Khalil defaulted on his repayment obligations, upon sale of the Property any remaining funds after payment of the total indebtedness to Rose would be distributed to Khalil.[3] If no default occurred, any remaining funds after payment of the total indebtedness would be distributed 50% to Rose and 50% to Khalil. Rose and Khalil signed the Settlement Agreement, failed to date it and the state court never approved it. Khalil also signed a promissory note and deeds of trust in favor of Rose, but did not date them or have his signature acknowledged. No one recorded the deeds of trust.

---

[3] In the original draft of the Settlement Agreement, Rose and Khalil agreed in the event of default and upon the payment of all debt that they would distribute the remaining funds 80% to Rose and 20% to Khalil. The parties later struck and initialed that distribution language, so it appears that any remaining funds would now go to Khalil.

-3-

**B.    Postpetition events**

Khalil filed a chapter 7 bankruptcy case on February 6, 2012. Khalil's Schedule A reflected a one-half interest in the Property.

**1.    Rose's adversary action against Khalil**

Rose filed an adversary complaint against Khalil asserting claims under § 523 and § 727.  The parties ultimately settled on November 4, 2014.  In that litigation, Rose filed a motion for turnover for one-half of the rents he claimed Khalil collected from the Property and improperly withheld from Rose.  In his brief and attached declaration, Rose stated:  "I am a half-owner of the [Property]."  "As a half-owner of the [Property], I am entitled to half of the monthly rent received."  "As Defendant's bankruptcy estate owns the remaining one-half interest in the [Property], one half of the rent received by Defendant belongs to the estate." "Plaintiff/Movant herein is the co-owner of the [Property], holding a one-half interest as Tenant in Common."  The bankruptcy court denied Rose's turnover motion for failing to file it in the main case against Trustee, who currently collected the rents.

**2.    Rose's motion for determining ownership interests**

Thereafter, Rose filed in the main case a "Motion by Co-Owner Lawrence D. Rose for Order Determining Ownership of 18431 Arminta St., Reseda, CA," which the bankruptcy court recast as a "Motion for Setting Property Value of Co-Owned Property Interests," or the "Valuation Motion."  Rose sought a determination of the parties' respective ownership interests in the Property.  Rose argued that an 80% ownership interest belonged to him and 20% belonged to Khalil's bankruptcy estate based on the mens' respective contributions to the purchase price.  Rose argued that under

-4-

California law, as a tenant in common, he was entitled to a ratable distribution of any sale proceeds in proportion to his ownership interest. Thus, argued Rose, he should receive 80% of the net sale proceeds in accordance with § 363(j).

Trustee opposed the Valuation Motion, contending that Rose needed to file an adversary proceeding for such relief, not a motion, and that Rose's request contradicted his previous testimony that he was "one-half" owner of the Property.

In the bankruptcy court's ruling denying the Valuation Motion, the court observed the grant deed's silence as to the mens' ownership interest in the Property; no language evidenced a different intent or demonstrated a fractional interest other than 50-50. Although Rose mentioned the Settlement Agreement in his declaration, he failed to submit the document to the court. The court also took judicial notice of Rose's prior admissions that he held only a one-half interest in the Property.

The cases cited by Rose failed to persuade the court, because they related to community property cases or to partition actions, both of which the court deemed irrelevant. Thus, based on Rose's prior admissions and absent any further documentary evidence indicating otherwise, the court found that Rose held only a one-half interest in the Property. The bankruptcy court entered the Valuation Order on November 14, 2013.

**3. Trustee's adversary action against Rose to sell the Property under § 363(h)**

Meanwhile, before the bankruptcy court had ruled on the Valuation Motion, Trustee filed an adversary action against Rose seeking to sell Rose's and the estate's interest in the Property

under § 363(h).[4]

In his answer, filed **after** the bankruptcy court entered the Valuation Order determining Rose had a 50% interest in the Property, Rose disputed Trustee's contention that the estate had a 50% interest in the Property. Rose claimed he had purchased an 80% interest and the recorded grant deed "control[ed] the relative interests of Mr. Rose and the Estate in the Property." Rose agreed to the sale, but claimed he either had a right to purchase the estate's 20% interest under § 363(i), or that Trustee had to distribute 80% of the net sale proceeds to Rose in accordance with § 363(j).

### a.    Rose's motion for summary judgment

Rose moved for summary judgment on Trustee's complaint (the "MSJ"). He contended that the only disputed issue was "the extent of [his] ownership interest in the [Property]." The arguments supporting Rose's position that he owned an 80% interest in the Property were virtually identical to those he raised in the Valuation Motion, including his cited California cases. Rose contended that because he and Khalil held title to the Property as

---

[4] Under § 363(h), the trustee may sell both the estate's interest and any co-owner's interest in property in which the debtor had, at the time of the commencement of the case, an undivided interest as a tenant in common, if —

(1) partition in kind of such property among the estate and such co-owners is impracticable;
(2) sale of the estate's undivided interest in such property would realize significantly less for the estate than sale of such property free of the interests of such co-owners;
(3) the benefit to the estate of a sale of such property free of the interests of co-owners outweighs the detriment, if any, to such co-owners; and
(4) such property is not used in the production, transmission, or distribution, for sale, of electric energy or of natural or synthetic gas for heat, light, or power.

-6-

tenants in common (and not as joint tenants which presumes an equal ownership share), California law recognized upon a partition sale the extent of the mens' interests to be proportionate to their contributions to the Property, which included purchase price and improvements. Thus, argued Rose, since he contributed $300,000 of the Property's $375,000 purchase price, he owned an 80% interest in it and was entitled to 80% of the net sale proceeds. Rose now included a copy of the signed but undated Settlement Agreement, which set forth the terms of any sale proceeds distribution between the men.

Trustee opposed the MSJ, contending that the parties' respective ownership interests in the Property had been previously litigated in the Valuation Motion and decided in the Valuation Order, which Rose did not appeal. The Valuation Order determined that each party owned a one-half interest in the Property and entitled each to only 50% of the net sale proceeds. Accordingly, Rose was precluded from relitigating that issue.

**b.    The MSJ hearing and the bankruptcy court's ruling on the MSJ**

At the MSJ hearing, Rose conceded that he held only a 50% interest in the Property. Nonetheless, he argued entitlement to 80% of the net sale proceeds based on his 80% contribution to the purchase price. Rose believed his right to reimbursement under California law applied to Trustee's sale under § 363(h). Trustee disputed this, contending that Rose's entitlement did not exceed 50% of the proceeds because: (1) the Bankruptcy Code, not California law, controlled the sale and § 544(a)(3) gave Trustee power as a bona fide purchaser ("BFP") to avoid any unperfected

security interest Rose may have had; and (2) California law presumes that tenants in common hold a 50-50 interest in real property when the deed is silent.

Because the bankruptcy court believed the parties had raised these arguments for the first time at oral argument, it decided to take the matter under advisement to review their cited cases and to consider their new arguments. Before announcing its intent to continue the MSJ, however, the court offered Rose the opportunity for further briefing. Rose declined, contending that the court had enough before it to rule on the legal issue of his right to reimbursement from the net sale proceeds and his respective amount of entitlement.

The bankruptcy court issued its Memorandum Decision on May 1, 2014, determining that Rose was entitled to only 50% of the net sale proceeds. The court disagreed that Rose's right to reimbursement involved a different issue from his ownership interest in the Property. In the court's opinion, the terms of the unambiguous grant deed controlled, which, under California law, created the presumption that Rose and Khalil each owned an equal, undivided one-half interest in the Property. While recognizing California's allowance of extrinsic evidence to rebut this presumption in certain cases, the court concluded that the following precluded Rose from doing so here: (1) on the petition date, the grant deed reflected that Rose and Khalil presumptively owned the Property 50/50 as tenants in common; (2) Rose stipulated at the MSJ hearing that he held a 50% ownership interest in it; and (3) due to Trustee's status as a BFP under § 544(a)(3) and his ability to rely on the face of the unambiguous grant deed, Rose

-8-

could not introduce extrinsic evidence to vary its terms.

The bankruptcy court distinguished the California cases Rose cited to support his argument for an unequal share of the sale proceeds. Those cases involved partition actions or a division of community property assets under state law, not a sale under the Bankruptcy Code. And, they involved situations as between the parties themselves, not the rights of third parties.

Although Trustee had not filed a cross-motion for summary judgment but had also argued that no genuine issue of material fact existed as to the parties' respective interests in the Property, the bankruptcy court decided to grant Trustee partial summary judgment on the discrete issue of Rose's reimbursement right. The court denied Rose's MSJ because it believed certain issues remained to be litigated regarding the sale under § 363(h). He does not dispute that ruling on appeal.

The bankruptcy court entered an order denying Rose's MSJ and granting Trustee partial summary judgment under Civil Rule 56(f) (the "Order"). Rose timely appealed. The Panel granted leave to appeal the Order to the extent it was interlocutory.

## II. JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(A). We have jurisdiction under 28 U.S.C. § 158.

## III. ISSUES

1. Did the bankruptcy court err in granting Trustee partial summary judgment under Civil Rule 56(f)?

2. Did the bankruptcy court err in determining that Rose was entitled to only 50% of the net sale proceeds?

## IV. STANDARD OF REVIEW

The bankruptcy court's order granting summary judgment is reviewed de novo. Shahrestani v. Alazzeh (In re Alazzeh), 509 B.R. 689, 692-93 (9th Cir. BAP 2014). "Viewing the evidence in the light most favorable to the non-moving party, we must determine 'whether there are any genuine issues of material fact and whether the trial court correctly applied relevant substantive law.'" New Falls Corp. v. Boyajian (In re Boyajian), 367 B.R. 138, 141 (9th Cir. BAP 2007)(quoting Tobin v. San Souci Ltd. P'ship (In re Tobin), 258 B.R. 199, 202 (9th Cir. BAP 2001)).

## V. DISCUSSION

### A. The bankruptcy court did not err in granting partial summary judgment to nonmovant Trustee.

Civil Rule 56(f), incorporated by Rule 7056, provides that after giving notice and a reasonable time to respond, the court may: (1) grant summary judgment for a nonmovant; (2) grant the motion on grounds not raised by a party; or (3) consider summary judgment on its own after identifying for the parties material facts that may not be genuinely in dispute. Rose contends the bankruptcy court committed reversible error by failing to provide sufficient notice that it was considering granting summary judgment to Trustee. Rose assigns further error by the bankruptcy court in raising arguments not contained in Trustee's opposition to the MSJ. Rose's arguments lack merit.

Where the party moving for summary judgment has had a full and fair opportunity to prove its case, but has not succeeded in doing so, a court may enter summary judgment sua sponte for the nonmoving party. Albino v. Baca, 747 F.3d 1162, 1176 (9th Cir.

-10-

2014)(citing Gospel Missions of Am. v. City of L.A., 328 F.3d 548, 553 (9th Cir. 2003)("Even where there has been no cross-motion for summary judgment, a district court may enter summary judgment sua sponte against a moving party if the losing party has had a full and fair opportunity to ventilate the issues involved in the matter.")).

Rose moved for summary judgment on the narrow legal issue of what percentage of net sale proceeds he was entitled to from Trustee's sale of the Property under § 363(h). While Trustee did not raise his defensive arguments regarding his BFP status or California's presumption of equal ownership interests among co-tenants in his opposition, instead focusing on issue and claim preclusion, he did raise them at the MSJ hearing. Rose had an opportunity to respond to these arguments and was even given the opportunity to further brief the issues, which he declined. Thus, Rose had a full and fair opportunity to prove his case. The transcript reflects that Rose too had also raised new arguments, which is why the bankruptcy court opted to continue the MSJ hearing and take the matter under advisement. Even if Trustee had not raised his arguments, the court could consider these legal issues to determine whether Rose was entitled to his requested relief.

Once the bankruptcy court decided the discrete legal issue of whether Rose was entitled to 50% or 80% of the net sale proceeds from the Property, it could not have erred in sua sponte granting partial summary judgment to Trustee on that issue. By filing the MSJ, Rose had conceded that no genuine issue of material fact existed as to his portion of the proceeds. As a result, Trustee

-11-

was entitled to judgment as a matter of law. Goldstein v. Fid. and Guar. Ins. Underwriters, Inc., 86 F.3d 749, 750-51 (7th Cir. 1996)(court did not err in entering summary judgment sua sponte in favor of nonmovant when no genuine issues of material fact existed, as movant conceded in filing motion for summary judgment in its favor). Rose's argument here is much ado about nothing. Even if the bankruptcy court had not formally entered judgment in favor of Trustee, the result would be the same; Rose will receive only 50% of the net sale proceeds.

Notably, this case has not been a model of proper procedure. Motions were filed when adversary proceedings should have been filed, and motions were filed in the wrong proceeding or context. Nonetheless, we see no error by the bankruptcy court in granting partial summary judgment to nonmovant Trustee.

**B. The bankruptcy court did not err in determining that Rose was entitled to only 50% of the net sale proceeds.**

Rose contends the bankruptcy court erred by not acknowledging his right of reimbursement under California law, which entitles him to 80% of the net sale proceeds from Trustee's sale of the Property because of his unequal contribution to the purchase price. First, Rose contends that because he and Khalil were tenants in common and not joint tenants, and because the grant deed was silent as to their respective shares, it could not be assumed they held an equal, undivided one-half interest in the Property. Rose contends that the presumption of equal ownership applies only in cases of joint tenancy, and the bankruptcy court erred by confusing the legal affects of a joint tenancy with a tenancy in common. We disagree.

-12-

As a general principle, a debtor's property rights that become part of the bankruptcy estate under § 541 are determined by applicable nonbankruptcy law. Thus, unless overridden by specific provisions of the Bankruptcy Code, the property rights belonging to Khalil on the petition date arose under state law. See Butner v. United States, 440 U.S. 48, 54 (1979). Here, we begin by looking to California law to determine the existence and scope of Khalil's interest in the Property prior to the petition date.

Contrary to Rose's argument, "[w]hen two or more persons take as tenants in common under an instrument silent as to their respective shares[,] [a] presumption arises their shares are equal." Caito v. United Cal. Bank, 20 Cal.3d 694, 705 (1978) (citing Anderson v. Broadwell, 119 Cal.App 150, 153 (1931)(where several grantees are named in a deed and their respective interests are not set forth therein, it will be presumed that each takes an equal interest)); In re Marriage of Rico, 10 Cal.App.4th 706, 710 (1992)(tenancy in common raises presumption of equal ownership)(citing Caito). Further, under California's "form of title" presumption, the description in a deed as to how title is held presumptively reflects the actual ownership status of the property. In re Marriage of Fossum, 192 Cal.App.4th 336, 344 (2011). This common law presumption is codified in CAL. EVID. CODE § 662, which states that "[t]he owner of the legal title to property is presumed to be the owner of the full beneficial title." "Accordingly, absent a showing to the contrary, the status declared by the instrument through which a party acquired title will control." Fossum, 192 Cal.App.4th at 344.

Here, the grant deed to the Property lists the owners as "Sie

-13-

Khalil, a Single Man and Lawrence Rose, a Single Man as Tenants in Common." The deed does not contain any other statements regarding the mens' ownership interests. Thus, prior to the petition date, California law created the presumption that Rose and Khalil each held an undivided one-half interest in the Property. Had they intended something other than equal ownership, Rose and Khalil could have stated so in the grant deed as did the grantors of the Property, which reflected their unequal ownership percentages.

However, as Rose correctly argues, California law allows the presumption of equal ownership to be rebutted by clear and convincing proof. See CAL. EVID. CODE § 662; Fossum, 192 Cal.App.4th at 344. And, in actions like partition or a partition sale, California law provides that a cotenant who has paid more than his portion of the purchase price for the property is entitled to an accounting. 5 Miller & Starr, Cal. Real Estate § 12:19 (3d ed. 2006); Demetris v. Demetris, 125 Cal.App.2d 440, 445 (1954).

It is undisputed that Rose paid 80% of the purchase price for the Property. It is also undisputed that Rose did not seek a partition action in state court against Khalil prior to Khalil's bankruptcy. Had the sale at issue here been a partition sale under California law, Rose would perhaps have a good argument. However, once Khalil filed for bankruptcy, governing bankruptcy law created new rights, particularly the "strong arm" powers of a trustee under § 544(a). And Trustee's action to sell the Property was not a partition sale under state law; it was a sale under the Bankruptcy Code.

A partition action or sale "addresses only the rights *inter*

-14-

*sese* of cotenants. They do not deal with the rights of **creditors** of one or more of the cotenants." Dubis v. Zarins (In re Teranis), 128 F.3d 469, 472 (7th Cir. 1997)(emphasis in original). In Teranis, the debtor's elderly mother purchased a condominium and titled it in both of their names. Id. at 470. Although the mother requested the property be titled jointly in her name and debtor's with right of survivorship (i.e., as joint tenants), the deed issued was one for tenancy in common. The debtor never lived at the condo and paid nothing for its upkeep. Upon debtor's bankruptcy filing, the chapter 7 trustee filed suit against the mother to sell the condo. The mother opposed the sale, contending that debtor had no ownership interest in it, even though both were listed on the deed. Id. at 470-71.

On appeal, the mother contended the district court erred in determining that debtor was a 50% owner of the condo, because she had provided sufficient proof to rebut the presumption of equal ownership under Wisconsin law, which included evidence that she paid the entire purchase price. Id. at 471-72. In rejecting the mother's arguments, which she supported with cases involving partition actions, the Seventh Circuit held that third parties, be they prospective buyers or creditors, cannot be expected to investigate the possibility of unequal ownership; they can rely upon the face of the deed indicating that each cotenant has an equal interest in the property. Id. at 472. Accord Henshaw v. Field (In re Henshaw), 485 B.R. 412, 419-20 (D. Haw. 2013)(citing Teranis and holding that creditors must be able to rely on the face of the deed, regardless of whatever equitable interests may exist between the joint tenants); Osberg v. Risler (In re Risler),

-15-

443 B.R. 508, 510 (Bankr. W.D. Wisc. 2010); <u>Seaback v. Barth (In re Barth)</u>, 2008 WL 5170558, at *11 (Bankr. E.D. Wisc. Nov. 7, 2008). Accordingly, the Seventh Circuit affirmed the district court's ruling that the trustee could rely on the deed to ascertain debtor's ownership of the condo, which reflected an equal, undivided ownership interest.[5]

Once Khalil filed for bankruptcy, his equal, undivided one-half interest in the Property became property of the estate under § 541(a). Likewise, § 544(a)(3) vested Trustee with the rights of a BFP of Khalil's real property and allowed him to avoid Rose's unrecorded equitable interest in the Property, even though no transfer had occurred. <u>Huber v. Danning (In re Thomas)</u>, 147 B.R. 526, 529 (9th Cir. BAP 1992). Section 544(a)(3) allows a trustee to avoid all obligations and transfers that would be avoidable by "a bona fide purchaser of real property . . . that obtains the status of a bona fide purchaser . . . at the time of the commencement of the case, whether or not such purchaser exists." Thus, at the time of petition, Trustee had all the rights and powers that a BFP of Khalil's undivided one-half interest would have.

---

[5] In <u>Teranis</u>, the mother tried to make a distinction much as Rose does here between joint tenancy and tenancy in common. Rose contends that joint tenants are always presumed to be equal owners under California law and can never rebut that presumption, whereas the rules are different for cotenants, and the presumption of equal ownership may be rebutted by proof that the parties' interests are unequal.

In its sidebar discussion of joint tenancy and tenancy in common, the <u>Teranis</u> court noted that the differences between the two legal concepts cease to exist for the purpose of division of sale proceeds, because the joint tenancy terminates upon the sale. 128 F.3d at 471 n.1. Thus, the court felt it unnecessary to distinguish between tenancy in common and joint tenancy. <u>Id.</u>

The powers of a BFP for purposes of § 544(a) are defined by state law. Placer Sav. & Loan Ass'n v. Walsh (In re Marino), 813 F.2d 1562, 1565 (9th Cir. 1987). Under California law, a BFP without actual or constructive notice takes free of a prior equitable interest or constructive trust interest. In re Thomas, 147 B.R. at 529 (citing Rafftery v. Kirkpatrick, 29 Cal.App.2d 503, 507-08 (1938)). Section 544(a)(3) makes a trustee's actual knowledge irrelevant. Id. However, constructive or inquiry notice will preclude a trustee's BFP status. In re Marino, 813 F.2d at 1555. "A party has constructive or inquiry notice of another's interest in property when he or she has knowledge of circumstances or a condition of the property that would prompt a prudent person to inquire about the other's interest and the prosecution of the inquiry would have revealed the other's interest." In re Thomas, 147 B.R. at 530.

In reviewing the grant deed, a BFP would have been put on notice that Khalil co-owned the Property with Rose. However, nothing in that deed, or in any other public document, would have put a BFP on notice that Rose had paid 80% of the purchase price, which might entitle him to reimbursement in a partition action. Joint ownership of property in and of itself does not impose a duty to inquire whether unrecorded interests or agreements exist between the co-owners. Caito, 20 Cal.3d at 702. Thus, as a BFP, Trustee took title to Khalil's one-half interest in the Property without liability for Rose's latent reimbursement claim. See RNT Holdings, LLC v. United Gen. Title Ins. Co., 230 Cal.App.4th 1289, 1296 (2014)(a BFP in California takes the property free of such unknown rights). Trustee could rely on the grant deed, which

-17-

indicated that each co-tenant held an equal, undivided one-half interest in the Property. In re Teranis, 128 F.3d at 472; In re Henshaw, 485 B.R. at 419-20; In re Risler, 443 B.R. at 510; In re Barth, 2008 WL 5170558, at *11.

Rose's evidence attempting to rebut the presumption of equal ownership came too late. When Khalil filed his bankruptcy petition, Trustee's rights as a BFP of Khalil's interest in the Property were created, because at that moment the presumption of equal, undivided ownership stood unrebutted. In re Barth, 2008 WL 5170558, at *12. A BFP who purchased Khalil's interest in the Property at that moment would have presumed, based on the recorded grant deed and California's "form of title" rule, he was purchasing an undivided, one-half interest in the Property. Id.; see also In re Teranis, 128 F.3d at 472.

Rose contends that the grant deed's silence as to the mens' ownership interests created an ambiguity, putting Trustee either on constructive or inquiry notice that their ownership interests were not equal, thereby destroying his BFP status under § 544. First, as we determined above, the grant deed was not ambiguous as to the mens' ownership interests on the petition date, the date that is relevant here. Further, this same argument was rejected by the bankruptcy court in the well-reasoned decision of In re Barth, 2008 WL 5170558, at *10-12. There, the co-owner argued that the deed's silence as to the co-tenants' interests was deliberate and this silence required any future BFP to look beyond the deed for evidence about the percentages of ownership that each of them held. The co-owner's argument was in part that Wisconsin law allows the presumption of equal ownership to be rebutted in

-18-

cases of tenancy in common deeds silent as to ownership percentages. The bankruptcy court disagreed, reasoning that Wisconsin law did not require a BFP to look beyond a silent deed; if the deed is silent, the presumption under state law is that the co-tenants share an equal, undivided interest in the property. The same is true in California; we reject Rose's argument that Trustee was required to inquire beyond the grant deed as to the mens' ownership interests. He had no such duty. Caito, 20 Cal.3d at 702.

## VI. CONCLUSION

Because Rose was entitled to only 50% of the net sale proceeds as a matter of law, and because there were no genuine issues of material fact in dispute as to this issue, we conclude the bankruptcy court did not err in granting Trustee partial summary judgment. We AFFIRM.